**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**

**JULIO CESAR PEREZ-MADRIGAL,**

    **Defendant.**

Case No. 16-20044-JAR

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Julio Cesar Perez-Madrigal's Motion to Compel Discovery (Doc. 15). Defendant requests that he and his counsel be given the opportunity to inspect and copy two videos that are part of the discovery in this case. The Government filed its response to Defendant's motion on August 10, 2016 (Doc. 19). The Court held a hearing on August 11, 2016, at which time the Court heard oral argument from the parties on Defendant's motion. After considering the parties' arguments in their briefs and at oral argument, the Court is prepared to rule. For the reasons stated below, the Court grants Defendant's motion to compel.

**I.     Factual Background**

Defendant was originally charged in a Complaint with two counts of firearm charges in violation of 18 U.S.C. § 922(g).[1] On May 12, 2016, Defendant was charged in an eight-count Indictment with various firearm and drug offenses.[2]

Defendant is charged in Count 5 of the Complaint with knowingly and intentionally possessing with intent to distribute 50 grams or more of methamphetamine on December 5,

---

[1] Doc. 1.
[2] Doc. 2.

1

2015. Relevant to this Count, the Government equipped an informant who allegedly received the methamphetamine distribution with an audio-visual recording device on December 10. The informant then met with Defendant to pay him for the distribution, and the device recorded a ten-minute conversation between the informant and Defendant.

Defendant is charged in Count 6 with knowingly and intentionally possessing with intent to distribute 50 grams or more of methamphetamine on January 7, 2016. On that date, the Government equipped an informant with a recording device in anticipation of a drug transaction between the informant and Defendant. The device purportedly captured a conversation between the informant and Defendant during this transaction.

Counsel for the Government, Terra Morehead, and Counsel for Defendant, Branden Bell, first met and conferred on June 1, 2016, at which time the Government provided discovery. This discovery included information that there had been several recorded events with a confidential informant ("CI") and Defendant. Defendant alleges that the Government did not make defense counsel aware of the existence of these videos through discovery or otherwise. Defendant further alleges that defense counsel was made aware of the videos only after reading the police reports. On June 23, 2016, defense counsel sent an email requesting copies of the audio and video recordings of the controlled purchases. The Government responded that it would "not provide those to you. You will need to review those in our office since it involves a C.I."[3] Defense counsel then asked if Defendant could come to the United States Attorney's Office ("USAO") to review the videos, and the Government responded, "[n]ot initially—you can come and review them first."[4]

## II. Discussion

---

[3] Doc. 15, Ex. A.
[4] *Id.*

The Court's Pretrial Order, entered on May 23, 2016, provides in relevant part:

> Pursuant to Fed. R. Crim. P. 16(a), within a reasonable time period after arraignment, and in any event at least 14 days before the deadline the court will set at the scheduling and status conference for the defendant to file motions to suppress and other pretrial motions and notices, the government must copy for the defendant or permit the defendant to inspect and copy or photograph . . . [a]ny relevant written or recorded statements made by the defendant.[5]

Consistent with the Pretrial Order, Fed. R. Crim. P. 16(a)(1)(B) provides that:

> Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
> (i) any relevant written or recorded statement by the defendant if:
> - the statement is within the government's possession, custody, or control; and
> - the attorney for the government knows—or through due diligence could know—that the statement exists.[6]

In determining whether to order the disclosure of the identity of or information regarding a confidential informant ("CI"), the Supreme Court has explained that courts must balance the government's interest in the flow of information to law enforcement officials against the defendant's competing interest in the right to prepare a defense.[7] Whether disclosure is warranted requires an analysis of "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors."[8]

As explained more fully below, here Defendant is not seeking disclosure of the identity of a CI, but instead is seeking compulsion of videos that purportedly show

---

[5] Doc. 9 at 7.

[6] Fed. R. Crim. P. 16(a)(1)(B).

[7] *Rovario v. United States*, 353 U.S. 53, 60–62 (1957); *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990); *United States v. Halbert*, 668 F.2d 489, 495–96 (10th Cir. 1982) (citations omitted); *United States v. Osorieo-Torres*, No. 12-40043-02-RDR, 2012 WL 5831186, at *9 (D. Kan. Nov. 13, 2012) (explaining that the balancing test applies to requests for "disclosure of information concerning informants").

[8] *Moralez*, 908 F.2d at 567 (citing *Rovario*, 353 U.S. at 62); *Osorieo-Torres*, 2012 WL 5831186, at *9.

Defendant speaking with a CI. Further, the Government is not objecting entirely to disclosure of the video, but rather is requesting disclosure on a limited basis. This motion does not concern whether the Government is required to disclose the identity of a CI, but instead concerns the circumstances under which the Government must disclose videos involving a CI. Thus, although the balancing test is not directly implicated, the Court finds that this balancing test provides the proper framework for the determination of Defendant's motion to compel.

### A. Government's Justifications for Discovery Practices

At the August 11 hearing, Ms. Morehead offered several justifications for the Government's practice in this case—and in other similar cases—of (1) requiring a defendant's attorney to first review discovery at the USAO before allowing the defendant to review discovery; and (2) not allowing defendants or defense counsel to make copies of videos or other recorded statements. Although the Court ultimately finds the Government's justifications unpersuasive, the Court addresses each in turn.

#### 1. Timing Issues

In its response to Defendant's motion, the Government states that "[i]t has been Government counsel's experience that it assists in minimizing time issues if defense counsel first reviews such recordings prior to providing them for a defendant's review."[9] The Government suggests that if defense counsel first reviews the evidence, Defendant can be directed to the most relevant portions of the videos on a subsequent visit. However, the requirement that a defendant's attorney first review evidence, before allowing a defendant to review the evidence during a later visit, only seems to invite inefficiencies for defense counsel. In any event, the

---

[9]Doc. 19 at 2.

Government's concerns regarding time should not impede a defendant's ability to review evidence or dictate the manner in which a defendant prepares his defense.

The Government also noted several times during the hearing that defense counsel did not bring the video issue to its attention until several weeks after the initial meet and confer. The Government apparently contends that defense counsel should have alerted it to the issue earlier, and that the delay is grounds for denial of Defendant's motion. The Court is not persuaded by this argument. The fact that defense counsel took several weeks to review the June 1 discovery and contact Government counsel about the video issue has no bearing on Defendant's motion to compel. In fact, Defendant alleges that until he reviewed this discovery, he did not know that the Government had these videos; the prosecutor did not bother to apprise him of this.

### 2. Safekeeping of Evidence

The Government contends that it refused to make the videos available for copying by Defendant or his counsel out of concern that the discovery might fall into the wrong hands. The Government is concerned that if the videos are made available for copying, Defendant or his counsel might obtain another copy of the videos, the videos might be stolen, or Defendant might provide the videos to other inmates. In fact, Defendant is in custody at CCA, and cannot take copies or keep copies of the videos in his possession in the general population at CCA. However, the Government has made no showing in this case that there is a heightened likelihood that the copies of videos might be stolen from Mr. Bell or made available to Defendant for dissemination to other inmates. Without a particularized showing, the Court cannot find that a

generalized concern for the safekeeping of evidence justifies keeping copies of these videos from Defendant or his counsel.[10]

### 3. Involvement of a Controlled Purchase and CI

The Government also argues that it should not be compelled to make the videos available for copying because this case involves a CI and controlled purchases of drugs. This argument is consistent with Ms. Morehead's response to Mr. Bell's initial request for a copy of the videos.[11] Ms. Morehead admitted at the hearing that this argument applies to any case involving a CI, rather than this particular case.[12] This generalized concern for safety in cases involving CIs, while certainly legitimate, does not justify the restrictions on discovery that the Government advocates here. Courts have, in some cases, denied defendants' requests to compel the Government to disclose the identity of CIs.[13] But here, Defendant is not requesting the disclosure of the identity of a CI. Instead, Defendant seeks to have videos of controlled purchases made available to his attorney for copying. Defendant was allegedly involved in the transactions, and therefore he likely already knows the parties who were involved.[14] Defendant also knows the dates of the recorded transactions, and has reports concerning the controlled

---

[10] *See United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990) (citing *Rovario v. United States*, 353 U.S. 53, 60–62 (1957)) (explaining that balancing test requires analysis of "the particular circumstances of each case").

[11] Doc. 15, Ex. 1 (email response from Ms. Morehead stating that "I will not provide those to you. You will need to review those in our office since it involves a CI.").

[12] Ms. Morehead contended at the hearing that she makes videos available for copying to defendants or defense counsel in some cases involving CIs. However, this is inconsistent with Ms. Morehead's response email, her previous contention at the hearing that the Government would not provide the videos to defense counsel because this case involves a CI, and her contention at the hearing that she does not provide copies of videos in cases involving controlled purchases.

[13] *E.g.*, *United States v. Vincent*, 611 F.3d 1246, 1251–52 (10th Cir. 2010); *United States v. Leahy*, 47 F.3d 396, 398–99 (10th Cir. 1995).

[14] The Government conceded as much at the hearing.

purchases.[15]  According to the Government, Defendant could come to the United States Attorney's Office to view the videos after his attorney initially reviews the evidence alone. Thus, it is unclear how not making the videos available for copying, while allowing Defendant to inspect the videos, enhances the security of informants and others involved in this investigation, without a showing that there is a heightened likelihood in this particular case that the copies will fall into the wrong hands.[16]  Accordingly, the Court finds that the Government's generalized concern does not justify the use of protected discovery in this case.

### 4. Concerns Regarding Mr. Bell

The Government also argued, initially in an ex parte sidebar conference that it requested, that Mr. Bell should not be allowed to obtain copies of the videos because of an issue at a trial, more than one year ago, involving different Government counsel, in which Mr. Bell allegedly altered video evidence.  The Court directed Ms. Morehead to provide her explanation in open court so that Mr. Bell would have an opportunity to respond.  Ms. Morehead alleged that at the previous trial, Mr. Bell presented a video of a controlled purchase in which eleven seconds of the video were excised out.  Ms. Morehead alleged that the prosecution discovered the inconsistency after comparing the video Mr. Bell played against the original video.  Because the removal of the eleven seconds benefited Mr. Bell's client regarding the location of the drug transaction at issue, the court allowed rebuttal evidence on the matter.

Mr. Bell responded that the eleven seconds of the video were not excised out, but that a conversion error occurred that threw off the sync between the audio and the video feeds in the recording.  Mr. Bell stated that after obtaining the video from the Government, the defense team

---

[15]*See* Doc. 15, Ex. 1 (email from Mr. Bell referencing reports that indicated the existence of the videos at issue here).

[16]As explained above, the Government has not made such a showing.

7

attempted to convert the video from PC to Mac format.  In the process of doing so, a conversion error occurred that left the audio and video out of sync.  In presenting the video to the witness, Mr. Bell asked whether, but for the lack of sync between the audio and video, the video accurately represented the location of the transaction.  The witness agreed.  After the Government reviewed the exhibit, it argued to the court that the video as presented might cause the jury to become confused and lead to an erroneous conclusion about the location of the transaction.  Upon hearing the Government's explanation, the defense voluntarily agreed to withdraw the exhibit, and the court allowed the Government to explain why the jury should not reach the conclusion that the lack of sync in the video might cause.  Mr. Bell argued that the conversion error was a technical mistake and not an attempt to excise portions of the video out.  Further, Mr. Bell stated that other defense counsel in that multi-defendant trial who used Mac technology experienced the same problem.

The Court is satisfied by Mr. Bell's explanation.  Ms. Morehead was not present at the trial, but heard the account she gave through a colleague.  Mr. Bell explained how the audio and video became out of sync because of a conversion error, rather than based on an attempt to remove portions of the video.  Based on the record before it, the Court is not convinced that Mr. Bell presented the video in an attempt to mislead or confuse the jury.  Even if the Government had made a definitive showing that Mr. Bell misused the video, such a showing would not justify keeping his client in this case from viewing discovery until Mr. Bell himself reviewed it, or preventing Mr. Bell from retaining a copy of the video.  As in the previous trial, cross examination and the use of curative instructions would place a check on any attempt by defense counsel to misuse the videos at issue here.  The Government's allegation as to Mr. Bell's conduct

at a previous trial simply does not trump Defendant's right to access discovery and effectively prepare a defense in this case.

### 5.     Ex Parte Justification

The Government also provided another justification at the ex parte sidebar conference. The Court will not explain the substance of this ex parte justification.  However, the Court finds that this justification also applies generally to cases of this type, and does not alone justify the use of protected discovery in this case.

### 6.     Interpretation of Rule 16

Finally, the Government argues that under Fed. R. Crim. P. 16, it need only make the videos available for inspection or copying, but not both.  The Government contends that because Rule 16 provides that it must make recorded statements by a defendant "available for inspection, copying, *or* photographing,"[17] the Government can employ any one of these three alternatives to satisfy Rule 16.  At the outset, the Court notes that the Government's interpretation directly contradicts the plain language of the Pretrial Order, which provides that "the government must copy for the defendant *or* permit the defendant to inspect *and* copy or photograph . . . [a]ny relevant written or recorded statements made by the defendant."[18]  The Government did not object to the Pretrial Order at the time it was entered.

Turning to Rule 16, the Government has provided no authority that supports its position that the Government can choose which alternative method of disclosure—inspection, copying, or photographing—is made available to Defendant.  The Court is aware of no such authority.  To be sure, Congress has carved out an exception to the general disclosure requirements under Rule 16

---

[17] Fed. R. Crim. P. 16(a)(1)(B) (emphasis added).

[18] Doc. 9 at 7 (emphasis added).

in the context of child pornography offenses.[19]  Because a video recording of child pornography is itself illegal contraband, reproduction of such recordings pursuant to Rule 16 is prohibited.[20] The relevant statute provides:

> Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography (as defined by section 2256 of this title), so long as the Government makes the property or material reasonably available to the defendant.[21]

The property or material is deemed "reasonably available" to the defendant if the property is made available "for inspection, viewing, and examination at a government facility."[22]  This statutory exception makes clear that the general requirement under Rule 16 is that a recorded statement must be made available to a defendant, and that the defendant may choose whether to inspect, copy or photograph, or all of the above.  Consistent with this interpretation, courts have held that pursuant to Rule 16, the Government must make recorded statements and discoverable material in its possession available for inspection and copying.[23]  Therefore, the Court finds that absent some justifiable exception, Rule 16 requires the Government to make the videos available for inspection *and* copying.

---

[19] *United States v. Spivack*, 528 F. Supp. 2d 103, 105 (E.D.N.Y. 2007).

[20] *Id.*

[21] 18 U.S.C. § 3509(m)(2)(A).

[22] *Id.* § 3509(m)(2)(B).  Note that under this provision, the material must be made available for inspection by defense counsel *and* the defendant.  *Id.*

[23] *United States v. Duncan*, 598 F.2d 839, (4th Cir. 1979) (holding that prosecution's policy that made accessible to defendant the entire file of prosecution but did not allow copying of documents in that file was inadequate as a substitute to requirements of Rule 16); *United States v. Lonzo*, 793 F. Supp. 57, 59 n.8 (S.D.N.Y. 1992) (explaining that Rule 16 requires government only to make tapes of recorded conversations available to defendant for copying, rather than actually providing copies to defendant); s*ee United States v. Long*, 817 F. Supp. 79, 80 (D. Kan. 1993) (stating that pursuant to Rule 16(a)(1)(C), "the government has an obligation to permit the defendant to inspect and copy materials in the possession, custody, or control of the government and which were obtained from or belong to the defendant").

The Government has asserted several justifications above for requiring defense counsel to review the videos first before Defendant and for not making the videos available for copying. The Court finds that the time issues do not provide a basis for the discovery practices advocated for by the Government.  Further, the concerns regarding discovery falling into the wrong hands, the involvement of controlled purchases and CIs in this case, and the Government's ex parte justification are all general concerns that are not specific to this case.[24]  Additionally, the Court is satisfied by Mr. Bell's response to Ms. Morehead's concerns about his conduct at a previous trial, and in any event these concerns do not warrant the placement of restrictions on his or his client's ability to discover evidence.  Finally, the Court is not persuaded that Rule 16 allows the Government, at its discretion, to make the videos available to defense counsel and defendant for either inspection or copying.  Because the Government's arguments do not justify the discovery restrictions it requests, and because of the reasons stated below, the Court finds that the balance weighs decidedly in favor of allowing Defendant to fully discover the videos at issue here.

### B.     Justifications Favoring Open Discovery

As explained above, the Pretrial Order explicitly states and Rule 16 suggests that the Government must provide Defendant and his attorney an opportunity to inspect and copy the videos at issue here.  In addition to this authority, the Court at the August 11 hearing explained several policy justifications that support open disclosure of the video evidence.  The Court addresses each justification in turn to supplement its findings at the hearing.

#### 1.      Defendant's Right to Prepare a Defense

---

[24]*United States v. Vincent*, 611 F.3d 1246, 1251 (10th Cir. 2010) (citing *Rovario v. United States*, 353 U.S. 53, 60–62 (1957)) (explaining that balancing test requires analysis of "the particular circumstances of each case"); *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990) (same).

Pursuant to the Sixth Amendment to the United States Constitution, defendants have a right to prepare a defense.[25] The discovery restrictions advocated for by the Government would significantly interfere with that right. If Defendant and his counsel were allowed to simultaneously review the video evidence in the first instance, this would allow for the defense team to begin preparing for trial earlier. The requirement that defense counsel first review the evidence, before allowing Defendant to do the same, only delays this preparation and increases the likelihood of trial continuances. The same can be said of the no-copy policy. Scheduling, transportation, and other logistical limitations likely mean that Defendant and his attorney would not be able to view the evidence at the USAO more than a couple of times. Review of the evidence on such an abbreviated basis would not allow Defendant an opportunity to effectively prepare his defense.

### 2.     Attorney-Client Relationship

The Government's practice also undermines the fostering of trust between a defendant and his attorney. Pursuant to the Government's procedure, the attorney is required to first review the evidence alone at the USAO. Then the attorney is expected to speak with the defendant about the evidence before the defendant is allowed a review. It requires little imagination to consider the questions this procedure likely creates in the defendant's mind: Why is my attorney reviewing evidence without me? Why is my attorney reviewing evidence at the Government's office? Is the information my attorney is telling me about the evidence accurate? These

---

[25]*Vincent*, 611 F.3d at 1251 (referring to balancing test employed here, which considers "the individual's right to prepare his defense"); *Taylor v. Illinois*, 484 U.S. 400, 409 (1988); *United States v. Mills*, 641 F.2d 785, 788 (9th Cir. 1981) (recognizing right to prepare a defense as "a fundamental aspect of our adversary system"); *see* U.S. Const. amend. VI.

questions do not promote trust between a defendant and his attorney, an element that is essential to the attorney's effective representation of the defendant.[26]

### 3. Ability to Assess Plea Offers

Further, with only a limited opportunity to review discovery, a defendant cannot fully assess the factors that may influence his decision to accept a plea offer presented by the Government. Mr. Bell stated at the hearing that in some circumstances he has had to advise clients regarding plea offers without having the benefit of full discovery. He has had to explain to clients, after being presented with a plea offer by the Government, that there is evidence that neither he nor the defendant has seen, or that he has reviewed evidence that the defendant has not yet had an opportunity to review. Thus, some of his clients have had to decide whether to accept or reject a plea offer without having first reviewed discovery. The Government's practice here of providing only limited discovery encourages this problem, because defendants cannot take advantage of an early and meaningful review of discovery. With only an abbreviated opportunity to review discovery at the United States Attorney's Office, counsel for Defendant faces a decreased likelihood of finding exculpatory or material evidence before entering into potential plea negotiations. This makes it difficult for counsel to provide effective representation, and for the Court to accept a defendant's plea knowing that it was made voluntarily and with knowledge of the factual basis for the plea.[27]

### 4. United States Marshals Service Resources

---

[26] *See Morris v. Slappy*, 461 U.S. 1, 21 (1983) (Brennan, J., concurring) (explaining that "a defendant has an interest in his relationship with his attorney," and that an attorney can most effectively represent a client "if the attorney and the defendant have a relationship characterized by trust and confidence").

[27] *See Bonney v. Wilson*, 754 F.3d 872, 881–82 (10th Cir. 2014) (citing *Hill v. Lockhart*, 474 U.S. 52, 58–60 (1985)) (explaining that defense counsel's "failure to investigate or discover potentially exculpatory evidence," thereby causing defendant to plead guilty, may constitute ineffective assistance of counsel).

Finally, the Government's approach would strain the resources of the United States Marshals Service ("USMS").  By refusing to allow defense counsel to have copies of videos which defense counsel can show this custodial defendant, the only way the defendant can review this evidence is if the USMS provides or arranges for the defendant to be transported from CCA to the United States Attorney's Office.  In fact,  the prosecutor relies upon the USMS to provide this service, although this is *not* the responsibility or duty of the USMS.  The USMS is tasked with a wide range of statutorily designated duties.[28]  But the duty to transport a defendant for the purpose of discovery review is not within these statutorily designated duties.[29]  The Court is not convinced that the expenditure of the USMS' resources and the Government's restrictive discovery practices are justified by the Government's arguments above.

The four primary policy reasons identified above favor open discovery where, as here, the Government has not presented compelling justifications for protected discovery.  Accordingly, the Court grants Defendant's motion to compel discovery of the videos.

### C.     Protected Discovery in This Division

Ms. Morehead asserted at the August 11 hearing that in some cases she makes evidence available to defendants and their counsel for copying.  However, Ms. Morehead also suggested that she follows the protected discovery practice described in this opinion in other cases involving controlled purchases.  Ms. Morehead also explained in her response email to Mr. Bell that she would not make the videos available for copying "because this case involves a CI."[30]

---

[28] 28 U.S.C. § 566 (setting forth powers and duties of the USMS).

[29] *See id.*; 91 C.J.S. United States Marshals § 19 Duty to Transport and Hold Prisoners (addressing duty of USMS to transport prisoners to court for purpose of providing testimony; not addressing duty to transport for purpose of discovery review).

[30] Doc. 15, Ex. A.

Mr. Bell stated at the hearing that it is the practice of the USAO in the Kansas City Division in this District to condition discovery on defense counsel agreeing not to provide copies of discovery items to defendants. This policy was identified in a recent concurrence in a Tenth Circuit opinion, *United States v. Woods*.[31] In *Woods*, Judge Holmes, joined by Judge Kelly, explained:

> Though this is not the proper setting in which to definitively opine on these matters, suffice it to say that I harbor significant concern regarding the ethical or legal propriety *vel non* of what the government's counsel represented to the district court was the "traditional process employed in criminal cases" by the United States Attorney's Office for the District of Kansas ("USAO") of conditioning the delivery to defense counsel of "a complete set of discovery" on "the understanding that *none* of the discovery would be left in the possession of the defendant." R. at 46 (emphasis added). I do not believe that the majority's opinion—which turns on the procedural question of jurisdiction (or, more precisely, the lack of a proper showing thereof)—could be reasonably read as endorsing the propriety of USAO's so-called "traditional process" (i.e., its conditional-discovery policy). However, even the remote possibility that the majority's opinion might be construed in this manner leads me to concur only in the judgment, not the majority's reasoning.[32]

The Court is also aware that these protected discovery practices occur widely in certain types of cases in this Division.[33] In response to these practices and the problems that they cause,[34] the Court has been working with a group of judges, defense attorneys, and Assistant United States Attorneys to modify the existing pretrial order and discovery practices in this Division.

Although Ms. Morehead represents that the practices employed in this case are not employed in all drug cases, her contrary statements and her email response suggest that these practices are commonplace. Mr. Bell's assertion, Judge Holmes' concurrence, and this Court's

---

[31] -- F. App'x --, No. 15-3304, 2016 WL 3457754, at *3 (10th Cir. June 23, 2016) (Holmes, J., concurring).

[32] *Woods*, 2016 WL 3457754, at *3.

[33] These practices appear to be unique to this Division. The Court did not confront these issues during more than thirteen years of presiding in the Topeka Division.

[34] *See supra*, Part II.B.

experiences in other cases further indicate that protected discovery is the norm in the Kansas City Division, at least in cases involving CIs or confidential sources, the vast majority of which are drug cases.  To the extent this is the case, this Court echoes Judge Holmes' concerns with applying protected discovery as a default rule to an entire genre of cases.  If the Government can establish good cause to prohibit defense counsel or a defendant in a particular case from discovering an item of evidence, Rule 16 provides a remedy in the form of a protective order.[35]  But making discovery or preparation of a defense more difficult for a defendant through the use of an attorney-first review process or a no-copy policy is simply not an appropriate response to the Government's generalized concerns for safety.  Therefore, the Court grants Defendant's motion to compel.

### III.   Conclusion

The Government offers several justifications for its requirement that defense counsel first review the videos and that the videos not be made available for copying.  Although these justifications center on the Government's general concerns about informant safety and the safekeeping of evidence, they do not justify the discovery restrictions that the Government advocates for in this case.  The Government has failed to demonstrate any particularized interest in protecting the evidence in this case that would outweigh Defendant's Sixth Amendment rights to effective assistance of counsel and preparation of a defense.  Further, the Pretrial Order requires and Rule 16 suggests that the Government make the videos available to Defendant and his counsel for inspection, copying, and photographing.  The Court has also identified several policies that favor open discovery in this case, as in most cases, which outweigh the

---

[35] Fed. R. Crim. P. 16(d)(1).

16

Government's concerns.  Finally, the Court and the Tenth Circuit have previously expressed concerns with similar protected discovery practices that are applied to a wide swath of cases in the Kansas City Division.  Accordingly, the Court grants Defendant's motion to compel.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Julio Cesar Perez-Madrigal's Motion to Compel Discovery (Doc. 15) is **granted**.  The Government shall make the videos identified above available to defense counsel *and* Defendant for inspection and copying.

**IT IS SO ORDERED.**

Dated: September 6, 2016

S/ Julie A. Robinson  
JULIE A. ROBINSON  
UNITED STATES DISTRICT JUDGE